UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 3:20-cr-52 |
| v. ) | Judges Varlan / Poplin |
| ) | |
| VINCENT HARRIS ) | |

## PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, the defendant, VINCENT HARRIS, and the defendant's attorney, Michael D. Weinstein, Esq., have agreed upon the following:

1. The defendant will waive indictment and arraignment and plead guilty to an information charging defendant with the following offense:

    (a) Count One – Conspiracy to Pay, Solicit, and Receive Kickbacks: the defendant knowingly, intentionally, and unlawfully conspired with one or more other persons to Offer and Pay, and Solicit and Receive kickbacks, in violation of 42 U.S.C. § 1320a-7b(b)(1)(B), (b)(2)(B), and one or more such persons did an act to effect the object of the conspiracy, all in violation of 18 U.S.C. § 371.

    The maximum punishment for this offense is five years' imprisonment, a $250,000 fine, three years' supervised release, and a $100 mandatory assessment.

2. In consideration of defendant's guilty plea, the United States agrees not to further prosecute defendant in the Eastern District of Tennessee for any other non-tax criminal offenses committed by defendant that are related to the charges contained in the information and that are known to the United States Attorney's Office for the Eastern District of Tennessee at the time this plea agreement is signed by both parties.

1

3. Defendant has read the information, discussed the charge and possible defenses with defense counsel, and understands the crime charged. Specifically, the elements of the offense are as follows:

    (a) Count One – Conspiracy to Pay, Solicit, and Receive Kickbacks, in violation of 18 U.S.C. § 371:

        (i) two or more persons conspired or agreed to commit the crime of Payment, Solicitation, or Receipt of Health Care kickbacks, in violation 42 U.S.C. § 1320a-7b(b)(1)(B), (b)(2)(B);

        (ii) the defendant knowingly and voluntarily joined the conspiracy; and

        (iii) a member of the conspiracy did an overt act for the purpose of advancing or helping the conspiracy.

4. In support of defendant's guilty plea, the United States and defendant agree and stipulate to the following facts, which satisfy the elements of the offense. These are the facts submitted for purposes of defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

    (a) From on or about July 2018 to on or about May 2019, defendant owned and operated Smart Support Professionals, LLC ("Smart Support Professionals"), a North Dakota registered business entity doing business in Boca Raton, Florida.

    (b) From on or about July 2018 to on or about May 2019, a person whose initials are E.P. was the owner and operator of Florida Primary Sourcing, LLC ("Florida Primary Sourcing"), a Florida registered business entity doing business in Boca Raton, Florida.

    (c) From on about July 2018 through on or about May 2019, a person whose initials are I.C., and who resides in the Eastern District of Tennessee, directed the operations of

TN Premier Care by, for example, executing contracts and authorizing and signing checks on its behalf.

(d) In his role as owner and operator of Smart Support Professionals, defendant acquired signed doctors' orders for durable medical equipment ("DME"), and sold those signed doctors' orders to E.P., I.C., and others.

(e) To acquire signed doctors' orders for DME, defendant purchased "leads" from telemarketers and call centers that included recorded telephone calls between telemarketers and Medicare beneficiaries. After purchasing leads, defendant would arrange through a telemedicine company for a licensed medical professional to sign the orders for DME. Oftentimes, the doctors who signed the DME orders did so regardless of medical necessity, in the absence of a pre-existing doctor-patient relationship, without a physical examination, and sometimes based solely on a short telephonic conversation with the Medicare beneficiaries.

(f) After acquiring the signed doctors' orders, defendant sold the orders to I.C., through TN Premier Care, and E.P., through Florida Primary Sourcing. Defendant knew that the signed doctors' orders for DME that he sold to I.C., E.P., and others, would be submitted to Medicare for reimbursement.

(g) Defendant, E.P., I.C., and others created, operated, and shared cloud-based document-storage accounts through Box and Dropbox. Defendant and others uploaded electronic copies of signed doctors' orders for DME to the Box and Dropbox accounts so that E.P., through Florida Primary Sourcing, and I.C, through TN Premier Care, could access the signed orders and submit them, or cause them to be submitted, to Medicare for reimbursement. Oftentimes, Company B, which specialized in submitting claims to Medicare for reimbursement and purported

to conduct back-end "customer service" operations, accessed the shared Box and Dropbox accounts and submitted the signed orders to Medicare on TN Premier Care's behalf.

(h) To conceal the kickbacks that defendant received for the signed doctors' orders, defendant, E.P., I.C., and others, created sham contracts and documentation that disguised the kickbacks as legitimate payments for marketing and business-consulting services when, in fact, the payments defendant received from E.P. and I.C. were for completed doctors' orders for DME.

(i) From on or about July 2018 to on or about May 2019, defendant, through Smart Support Professionals, received illegal kickbacks in the amount of approximately $833,890 from E.P., through Florida Primary Sourcing, in exchange for doctors' orders for DME.

(j) From in or about July 2018 to in or about May 2019, I.C., through TN Premier Care, submitted and caused to be submitted approximately $778,429 in claims to Medicare for DME, for which TN Premier Care was reimbursed approximately $411,963. Of the claims submitted to Medicare by TN Premier Care during that time, most, if not all of the claims, were signed doctors' orders that defendant acquired and sold to E.P., who then sold them I.C.

(k) On or about August 13, 2018, defendant, through Smart Support Professionals, received $5,800 from E.P., through Florida Primary Sourcing, in exchange for signed doctors' orders for DME.

(l) On or about August 20, 2018, defendant, through Smart Support Professionals, received $5,900 from E.P., through Florida Primary Sourcing, in exchange for signed doctors' orders for DME.

(m) On or about August 27, 2018, defendant, through Smart Support Professionals, received $5,200 from E.P., through Florida Primary Sourcing, in exchange for signed doctors' orders for DME.

(n) On or about October 16, 2018, defendant, through Smart Support Professionals, received $72,000 from E.P., through Florida Primary Sourcing, in exchange for signed doctors' orders for DME.

(o) On or about October 29, 2018, defendant, through Smart Support Professionals, received $82,000 from E.P., through Florida Primary Sourcing, in exchange for signed doctors' orders for DME.

(p) On or about November 5, 2018, defendant, through Smart Support Professionals, received $27,000 from E.P., through Florida Primary Sourcing, in exchange for signed doctors' orders for DME.

(q) On or about November 13, 2018, defendant, through Smart Support Professionals, received $102,000 from E.P., through Florida Primary Sourcing, in exchange for signed doctors' orders for DME.

(r) On or about November 28, 2018, defendant, through Smart Support Professionals, received $52,000 from E.P., through Florida Primary Sourcing, in exchange for signed doctors' orders for DME.

(s) On or about December 10, 2018, defendant, through Smart Support Professionals, received $55,270 from E.P., through Florida Primary Sourcing, in exchange for signed doctors' orders for DME.

(t) On or about December 14, 2018, defendant, through Smart Support Professionals, received $67,125 from E.P., through Florida Primary Sourcing, in exchange for signed doctors' orders for DME.

(u) On or about December 26, 2018, defendant, through Smart Support Professionals, received $67,000 from E.P., through Florida Primary Sourcing, in exchange for signed doctors' orders for DME.

(v) On or about January 4, 2019, defendant, through Smart Support Professionals, received $45,000 from E.P., through Florida Primary Sourcing, in exchange for signed doctors' orders for DME.

(w) On or about April 11, 2019, defendant, through Smart Support Professionals, received $4,235 from E.P., through Florida Primary Sourcing, in exchange for signed doctors' orders for DME.

(x) Defendant's participation in the unlawful kickback scheme resulted in approximately $778,429 in claims for DME being submitted to Medicare for reimbursement on behalf of TN Premier Care, for which Medicare paid TN Premier Care approximately $411,963.

(y) Defendant admits that he knowingly and willfully received kickbacks—that is, money—from E.P., in return for providing E.P. with signed doctors' orders for DME.

(z) Defendant knew that the signed doctors' orders for DME that he sold to E.P. would be submitted to Medicare, a federal health care program, for reimbursement.

(aa) Defendant also admits that he knowingly and willfully paid kickbacks—that is, money—to E.P., in return for E.P. selling the signed doctors' orders for DME to I.C.

5. Defendant is pleading guilty because defendant is in fact guilty. Defendant understands that, by pleading guilty, he is giving up several rights, including:

(a) the right to be indicted by a grand jury for these crimes;

(b) the right to plead not guilty;

(c) the right to a speedy and public trial by jury;

(d) the right to assistance of counsel at trial;

(e) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

(f) the right to confront and cross-examine witnesses against the defendant;

(g) the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

(h) the right not to testify and to have that choice not used against the defendant.

6. The parties agree that the appropriate disposition of this case would be the following as to each count:

(a) The Court may impose any lawful term of imprisonment, any lawful fines, and any lawful terms of supervised release up to the statutory maximums.

(b) The Court will impose special assessment fees as required by law.

(c) The Court may order forfeiture as applicable and restitution as appropriate.

(d) Defendant agrees that the Court shall order restitution, pursuant to any applicable provision of law, for any loss caused to Medicare. Defendant agrees, pursuant to 18 U.S.C. §§ 3663(a)(3) and 3663A, that appropriate restitution, which represents the total loss to Medicare resulting from defendant's participation in the unlawful healthcare kickback scheme:

| Victim | Restitution Amount |
|---|---|
| **Medicare** | $411,963 |

The parties understand that the Court makes any determination regarding apportionment of restitution pursuant to 18 U.S.C. § 3664(h). The restitution amount is based on the reimbursements paid by Medicare, a federal health care program, for the signed doctors' orders for DME that defendant acquired and sold to E.P.

(e) Pursuant to Rule 11(c)(1)(B), at sentencing, the United States agrees to recommend that, pursuant to U.S.S.G. § 2B1.1(b)(1)(G), the total loss amount is more than $250,000 but not more than $550,000. This recommendation is not binding on the Court, and in the event the Court rejects this recommendation, defendant may not withdraw his guilty plea or rescind this plea agreement.

7. No promises have been made by any representative of the United States to defendant as to what the sentence will be in this case. Any estimates or predictions made to defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s). Defendant understands that the sentence in this case will be determined by the Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. Defendant acknowledges that the sentencing determination will be based upon the entire scope of defendant's criminal conduct, his criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

8. Given defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of § 3E1.1(a) of the Sentencing Guidelines. Further, if defendant's offense level is 16 or greater, and defendant is awarded the two-level reduction pursuant to § 3E1.1(a), the United States agrees to move the Court, at or before the time of sentencing, to decrease the offense level by one additional level pursuant to § 3E1.1 (b) of the Sentencing Guidelines. Should defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for his offense, including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the

United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that defendant not receive any reduction for acceptance of responsibility under § 3E1.1 of the Sentencing Guidelines.

9. Defendant agrees to pay the special assessment in this case prior to sentencing.

10. Defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. Defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. Defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. Defendant and counsel also agree that defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying defendant's counsel and outside the presence of defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, defendant agrees to disclose fully all assets in which he has any interest or over which he exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, defendant additionally agrees to the following specific terms and conditions:

(a) If so requested by the United States, defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form it provides and as it directs. Defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

(b) Defendant expressly authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate defendant's ability to satisfy any financial obligation imposed by the Court.

(c) If so requested by the United States, defendant will promptly execute authorizations on forms provided by the United States Attorney's Office to permit the United States Attorney's Office to obtain defendant's financial and tax records.

11. Defendant acknowledges that the principal benefits to the United States of this agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of defendant's acceptance of responsibility for the offense committed, defendant voluntarily, knowingly, and intentionally agrees to the following:

(a) Defendant will not file a direct appeal of his conviction or sentence with one exception: defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. Defendant also waives the right to appeal the Court's determination as to whether his sentence will be consecutive or concurrent to any other sentence.

(b) Defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack his conviction or sentence, with two exceptions: defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

(c) Defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be

sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

12. This plea agreement becomes effective once it is signed by the parties and is not contingent on defendant's entry of a guilty plea. If the United States violates the terms of this agreement, defendant will have the right to withdraw from this agreement. If defendant violates the terms of this agreement in any way (including, without limitation, by failing to enter a guilty plea as agreed herein, moving to withdraw guilty plea after entry, or by violating any court order or any local, state, or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute defendant for any and all federal crimes that he committed related to this case, including any charges that were dismissed and any other charges the United States agreed not to pursue. Defendant expressly waives any statute-of-limitations defense and any constitutional or speedy trial or double jeopardy defense to prosecution for the conduct covered by this agreement. Defendant also understands and agrees that a violation of this agreement by defendant does not entitle him to withdraw his guilty plea.

13. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

14. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning defendant's guilty plea to the above-referenced charges. There are no other agreements, promises, undertakings, or understandings between defendant and the United States. The parties understand and agree that the terms of this agreement

can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

**For the United States**

J. Douglas Overbey
United States Attorney

5-5-2020
Date

By: _William A. Roach_
William A. Roach
Assistant United States Attorney

**For the Defendant**

4/30/20
Date

_Vincent Harris_
Vincent Harris
Defendant

5/4/2020
Date

_Michael D. Weinstein_
Michael D. Weinstein
Attorney for Defendant

12